MATILDA S. PUELICHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3878.   Promulgated February 28, 1946.

*Fraley N. Weidner, Esq.,* for the petitioner.
*Richard L. Greene, Esq.,* for the respondent.

**OPINION.**

KERN, *Judge*: In the stipulation of facts petitioner concedes that the portion of the payment to her representing a payment of interest is taxable as ordinary income. On brief she concedes that the portion of the payment applicable to the note made by the members of the bondholders' protective committee is taxable as ordinary income. Therefore, the question left for our decision is whether the portion of the payment received by petitioner applicable to the principal of the four notes executed by the corporation, as maker, and the members of the committee, as endorsers, is taxable to her as ordinary income or as long term capital gain.

It is petitioner's contention that that part of the payment constituted an amount received on the sale or exchange of a capital

asset, within the provisions of section 117 (a) of the Internal Revenue Code, with special reliance on section 117 (a) (4), (f), which reads as follows:

(a) DEFINITIONS.—As used in this chapter—

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

\* \* \* \* \* \* \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (in cluding those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

Petitioner's first contention is that the payment on the judgment constituted "gain resulting from the sale or exchange of a capital asset." Respondent does not deny that the judgment was "property" within the definition contained in section 117 (a) (1) of the code. However, he contends on this point of petitioner's argument that an amount received in payment or compromise of an obligation by the debtor is not received on a sale or exchange thereof, citing *Hale* v. *Helvering*, 85 Fed. (2d) 819; *Bingham* v. *Commissioner*, 105 Fed. (2d) 971; *Fairbanks* v. *United States*, 306 U. S. 436; *Lee* v. *Commissioner*, 119 Fed. (2d) 946; *United States* v. *Burrows Bros. Co.*, 133 Fed. (2d) 772; *Frank J. Cobbs*, 39 B. T. A. 642; *Stoddard* v. *United States*, 49 Fed. Supp. 641; *Ralph Perkins*, 41 B. T. A. 1225; affd., 125 Fed. (2d) 150; *Jack Rosenzweig*, 1 T. C. 24.

Petitioner argues on this point that the notes are not merged in the judgment and that the payment to petitioner by the committee members who were endorsers on the four notes here in question constituted, in legal effect, a forced sale of the notes by petitioner to the committee by reason of the equitable doctrine of subrogation, and thus there has been a "sale or exchange" within the meaning of the statute. In the total absence of authority on this point, we are of the opinion that such a strained interpretation of the statute can not be justified. We can not believe that Congress meant the words "sale or exchange" to cover a fiction which has sometimes been used to justify the creation of rights by the doctrine of subrogation. See 50 Am. Jur. 757, Subrogation, sec. 116. We agree with respondent that there was not a "sale or exchange" within the meaning of section 117 (a) (4) of the Internal Revenue Code.

Petitioner next argues that she received the amount here in controversy in retirement of "notes \* \* \* of \* \* \* [a] corporation \* \* \* in registered form," within the meaning of section 117 (a) (4), (f). Respondent offers several objections to this theory:

First, that, even if the amount received were in retirement of notes, such notes were not in registered form as required by the statute; further, that the payment, being only 10 percent of the amount due, did not "retire" any note, and that the notes were not "issued" by a "corporation" within the meaning of the statute; and, finally, that the payment was received not on a note, but on the judgment.

The first point seems to us to be fatal to petitioner's position. Even assuming, as petitioner argues, that the payment was "in retirement of * * * notes," there is no showing that the notes in question were registered; indeed, petitioner makes no contention that they were, in the usual sense. She does contend that a note payable to the order of a named payee, negotiable only by endorsement of that payee, has the same legal effect as a registered document. We surmise that petitioner would therefore have us consider the notes here "as if" they were in registered form. We find no support in the authorities for such a theory, and we think it attaches too little importance to the procedure and effect of registration.

The phrase "in registered form" implies, at least, that the ownership of the instrument is listed in a register maintained for that purpose and that its negotiability is impaired to the extent of the necessity for changing the registration to indicate the change of ownership. That the fact of registration is important is indicated by our decision in *Babette G. Lurie*, 4 T. C. 1065, where notes were issued originally without registration and were later registered, but had not been registered for 18 months when they were retired, although they had been issued for more than 18 months. We held that the capital gain provisions of section 117 (f) were not applicable, since the notes had not been in registered form for 18 months, the minimum period provided for in that section.

In *Gerard v. Helvering*, 120 Fed. (2d) 235, affirming 40 B. T. A. 64, the court, referring to the contention of the taxpayer that the bond and mortgage there involved were instruments which came within the provisions of the statute now under consideration, said:

Since the bond had no coupons, she cannot succeed unless it was "in registered form", a phrase whose meaning in this context is entirely plain. It refers to the common practice in the issuance of corporate bonds which allows the holder of one or more coupon bonds of a series the option to surrender them and have one bond "registered" upon the books of the obligor, or of a transfer agent; or the holder may subscribe for such a bond in the first place. The purpose is to protect the holder by making invalid unregistered transfers, and the bond always so provides upon its face.

In *Avery v. Commissioner*, 111 Fed. (2d) 19, 23, the court said:

* * * it should be noted that section 117 (f) is not all-inclusive. For example, it is limited to evidences of indebtedness of a *corporation*, and further limited to evidences of indebtednesses of a corporation "*with interest coupon or in registered* form". [Emphasis supplied.]

In *Kanawha Valley Bank*, 4 T. C. 252, 257, we said concerning certain paving certificates:

\* \* \* In such case, the payment does not constitute a sale or exchange for tax purposes under section 117 (f) of the Internal Revenue Code, 1939 edition, unless they be those of a "corporation (including those issued by a government or political subdivision thereof) with interest coupons or in registered form." There is no indication that the paving certificates here were of that character. The evidence indicates that they constituted personal obligations of the abutting property owners secured by a lien upon such property. And it is not established that the certificates either carried "interest coupons" or were "in registered form."

We can not agree with petitioner that the notes involved here meet the requirements of section 117 (a) (4), (f). Therefore, it is unnecessary to consider respondent's other arguments on this point.

*Decision will be entered under Rule 50.*