GALVIN HUDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HILLSMAN TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43190, 43191. Promulgated June 30, 1953.

*P. K. Seidman, Esq.*, for the petitioners.
*Charles R. Hembree, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* Simply, the issue is whether the gain realized from the settlement of a judgment is ordinary income or capital gain when the settlement was made between the judgment debtor and the assignee or transferee of a prior judgment creditor. Petitioners contend that they are entitled to the benefits of section 117 (a), Internal Revenue Code, with regard to the gain from the settlement of a judgment. Respondent has determined that the gain is ordinary income and taxable as such. There is no question about the bona fides of the transaction, nor is there any disagreement about the fact that the judgment, when entered and transferred, was property and a capital asset. The parties differ, however, on the question of whether there was a "sale or exchange of a capital asset." Section 117 (a) (4). Petitioners and respondent both adhere to the principle that the words "sale or exchange" should be given their ordinary meaning. Petitioners, citing authority, define the word "sale" as follows:

A sale is a contract whereby one acquires a property in the thing sold and the other parts with it for a valuable consideration * * * or a sale is generally understood to mean the transfer of property for money * * *.

Also, "Sell in its ordinary sense means a transfer of property for a fixed price in money or its equivalent."

We cannot see how there was a transfer of property, or how the judgment debtor acquired property as the result of the transaction wherein the judgment was settled. The most that can be said is that the judgment debtor paid a debt or extinguished a claim so as to preclude execution on the judgment outstanding against him. In a hypothetical case, if the judgment had been transferred to someone other than the judgment debtor, the property transferred would still be in existence after the transaction was completed. However, as it actually happened, when the judgment debtor settled the judgment, the claim arising from the judgment was extinguished without the transfer of any property or property right to the judgment debtor. In their day-to-day transactions, neither businessmen nor lawyers would call the settlement of a judgment a sale; we can see no reason to apply a strained interpretation to the transaction before us. When petitioners received the $21,150 in full settlement of the judgment, they did not recover the money as the result of any sale or exchange but only as a collection or settlement of the judgment.

It is well established that where the gain realized did not result from a sale or exchange of a capital asset, the gain is not within the provisions of section 117(a) (4). In *R. W. Hale*, 32 B. T. A. 356, affd. 85 F. 2d 815, there was a compromise of notes for less than face value and the taxpayer claimed there was a sale or exchange of notes within

the meaning of the capital gains provision of the Code. In deciding the issue against the taxpayer, we said:

The petitioners did not sell or exchange the mortgage notes, and consequently an essential condition expressly required by the statute has not been met and no capital loss has been suffered. * * *

The *Hale* case was cited with approval in *Pat N. Fahey*, 16 T. C. 105. There, the taxpayer, an attorney, was assigned, for a cash consideration, an interest in a fee. Upon a successful settlement of the litigation, the taxpayer was paid his part of the fee. We held that his share was not capital gain because he did not sell or exchange anything. In another situation, a redemption of bonds before maturity by the issuing corporation was not a sale or exchange of capital assets. *Fairbanks* v. *United States*, 306 U. S. 436. In a similar situation in *Bingham* v. *Commissioner*, 105 F. 2d 971, 972, the court said:

What may have been property in the hands of the holder of the notes simply vanished when the surrender took place and the maker received them. He then had, at most, only his own obligations to pay himself. Any theoretical concept of a sale of the notes to the maker in return for what he gave up to get them back must yield before the hard fact that he received nothing which was property in his hands but had merely succeeded in extinguishing his liabilities by the amounts which were due on the notes. There was, therefore, no sale of the notes to him in the ordinary meaning of the word and no exchange of assets for assets since the notes could not, as assets, survive the transaction. That being so, such a settlement as the one this petitioner made involved neither a sale nor an exchange of capital assets within the meaning of the statute. * * *

See also, *Jack Rosenzweig*, 1 T. C. 24, and *Matilda S. Puelicher*, 6 T. C. 300.

We have carefully considered the many cases cited by petitioners but we have found none of them controlling the issue before us. Cf. *Commissioner* v. *Bookstein*, 123 F. 2d 996; *United States* v. *Adamson*, 161 F. 2d 942; *Isadore Golonsky*, 16 T. C. 1450, affd. 200 F. 2d 72; *Louis W. Ray*, 18 T. C. 438; *McCue Bros. & Drummond, Inc.*, 19 T. C. 667. The respondent, therefore, must be sustained on this issue.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*