**COMMISSIONER OF INTERNAL REVENUE**

v.

**RAY et al.**

**No. 14429.**

United States Court of Appeals Fifth Circuit.

Feb. 12, 1954.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles W. Davis, Chief Counsel, John M. Morawski, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., Morton K. Rothschild, Sp. Asst. to Atty. Gen., Carolyn R. Just, Sp. Asst. to Atty. Gen., for petitioner.

William P. Fonville, Dallas, Tex., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

These are appeals by the commissioner from a holding and decision of the Tax Court[1] in two cases, heard by the Tax Court on petitions of taxpayers, husband and wife, who had filed income tax returns for 1946 on the community property basis. They were heard and determined below and consolidated for hearing here on one record. The holding and decision on stipulated facts[2] was that the gain from a transfer, from lessee, Louis W. Ray, to lessor, The Repub-

---

1. 18 T.C. 438.

2. The taxpayers, husband and wife, live in Dallas, Texas, where they filed income tax returns for the year 1946 on the community property basis. The husband, head of the community, will be referred to as taxpayer.

The taxpayer was the owner and operator of a retail merchandise store, commonly known as a variety store, for the conduct of which he rented part of a building for a period of five years beginning June 1, 1944, from Republic National Life Insurance Company, hereinafter called the lessor. Paragraph 15 of the lease restricted the right of the lessor to lease other parts of the building to competitors of the taxpayer. The rent for the five year period was fixed at $6,960.00, payable in monthly installments of $100.00 each for the first twelve months and $120.00 per month thereafter.

In December, 1946, the lessor desired to sell the building, part of which it had leased to the taxpayer, but was unable to do so for the reason that the prospective purchaser would not buy the building until and unless the property had been freed from the servitude imposed by the restrictive covenant of paragraph 15 in the lease held by taxpayer. On Dec.

17, 1946, the lessor paid the taxpayer $20,000.00 to acquire from him all of his right, title, and interest in and to the lease insofar as the servitude imposed by paragraph 15 was concerned, and taxpayer executed and delivered to the lessor the instrument in which, reciting the restrictive coverage and the inability of the lessor to sell the property unless it could become again the owner of it free and clear of the servitude it imposed, taxpayer bargained, sold, released and forever quitclaimed to the lessor all of the right, title and interest owned by him in the leasehold insofar as the restrictive covenant was concerned.

In their income tax returns for the year 1946, the taxpayers treated the gain of $20,000 as gain from the sale of a capital asset and reported only half of the sum in the computation of community net income. The commissioner asserted a deficiency on the ground that the $20,000 was ordinary income, all of which should be taken into account in the computation of the taxpayers' community net income. The taxpayers filed petitions with the Tax Court, which decided that the $20,000 was gain from the sale of a capital asset and therefore taxable as capital gain.

lic National Life Insurance Company, freeing lessor's property from the servitude imposed for lessee's benefit by clause fifteen [3] of the lease, was taxable to lessee not as ordinary income under 22(a) I.R.C., 26 U.S.C.A., as determined by the commissioner, but as capital gain under Section 117 as contended by the taxpayer.

Here urging upon us that the Tax Court erred in deciding as it did, the commissioner, citing and discussing the cases he relies on, thus summarizes his argument:

> "The decisive question is whether the formal relinquishment by the lessee of a favorable clause in a lease of business property in consideration of a cash payment by the lessor is a 'sale or exchange' within the meaning of Section 117 of the Internal Revenue Code. If the transaction was a sale, as the Tax Court decided, the sum represented capital gain; if it was not a sale, the sum was ordinary income. Although there are no decisions directly in point, there is a recent decision of the Second Circuit [Commissioner v. Starr, 204 F.2d 673] which holds that a sum received by a taxpayer for the release of a contract obligation not to sell to other dealers in the same city was not capital gain because the transaction was not a sale. The court held that such a release did not transfer the promisee's rights to the promisor; they merely came to an end and vanished. There are other analogous cases in which the courts have been asked to determine whether a particular transaction constituted a sale; in the majority of those cases the courts have held that unless a transaction is a sale within the ordinary meaning of that term it is not a sale within the meaning of Section 117. In the present case, the release did not transfer the lessee's rights to the lessor; they merely came to an end and vanished. There was no sale or exchange within the ordinary meaning of that term, and therefore there was no sale under Section 117."

On their part, the taxpayers, relying on the opinion of the Tax Court and on the other cases cited in its brief,[4] and quoting fully from the opinion of the Tax Court, thus summarize their argument:

> "A sale in the ordinary sense is a transfer of property for a fixed price in money or its equivalent. Examine the circumstances here, the precedent condition, the transaction and the subsequent condition. Before the transaction the taxpayer had a valuable property right, intangible but nonetheless property, a restrictive covenant in his lease [imposing a servitude on the property] which prevented competition in his trade or business. Before the transaction [which freed the property from this servitude] the lessor lacked a valuable right, the right to lease its premises to whomsoever it chose upon whatever terms it could arrange [and to sell it free of the servitude]. True it had once possessed this right, but it had conveyed the right for a consideration to the taxpayer. In the transaction the lessor gave its $20,000 to the tax-

3. "15th. Lessor agrees that unless the east 100 feet of this building be leased in its entirety to a Variety Store of the type mentioned in paragraph 14, it will not, during the period of this lease, rent any space in this block to a Variety Store as defined herein. This clause is not intended to prohibit the Lessor from leasing any of its space to any store or stores which, as a part of its business, carries a line of notions similar to those for sale by Lessee."

4. Ray v. Commissioner, 18 T.C. 438; Commissioner v. Golonsky, 3 Cir., 200 F.2d 72; Bell's Estate v. Commissioner, 8 Cir., 137 F.2d 454; McAllister v. Com'r, 2 Cir., 157 F.2d 235; Allen v. First Natl. Bank & Trust Co., 5 Cir., 157 F.2d 592; Burger-Phillips Co. v. Com'r, 5 Cir., 126 F.2d 934.

payer and in exchange the taxpayer gave to the lessor what it had not immediately theretofore possessed, the right to lease its premises to whomsoever it chose at whatever terms it could arrange.

"The Commissioner's position apparently depends upon a view that the restrictive covenant when transferred or released to the covenantor simply disappears, vanishes and becomes nothing and, therefore, cannot be the subject of a sale. The concept, it seems, overlooks the substantial fact that it is the right freely to lease that is the subject of the transaction. Intangible though the property may be, it is real and valuable to both parties to the transaction [a servitude imposed by] a restrictive covenant in the hands of the taxpayer, [an unburdened], a freely exercisable right in the hands of the lessor. The commissioner's view conceives the covenant as the thing and ignores the status of the intangible right [the servitude it imposes] involved as the substance of the sale. * * * In the commissioner's view property rights which disappear or, as he expresses it, vanish upon a relinquishment, surrender or transfer cannot be the subject of a sale even though the transfer or surrender or relinquishment for a consideration is that which, [by reuniting servient and dominant estate] effects the vanishment. There is much authority to the contrary [of these views.]"

We agree with the respondents' reasoning and with that of the authorities upon which they rely. We particularly agree with what is said in the opinion of the Tax Court and in that of the Court of Appeals in the Golonsky case, Commissioner v. Golonsky, 3 Cir., 200 F.2d 72. Because we do and because the opinions in those cases have, we think, not only correctly determined the issue presented here, but adequately set out the correct reasons for that determination, we will not attempt to restate those reasons. We will content ourselves with saying that, for the reasons advanced in those opinions, the decision and order of the Tax Court was right and it is affirmed.